UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )   CRIMINAL NO. 05-10108 (RGS)
                         )
V.                       )
                         )
CHRISTIAN MARTINEZ       )

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

INTRODUCTION

On November 10, 2005 Christian Martinez plead guilty to a one count indictment charging him with a violation of 8 U.S.C. s. 1326, unlawful re-entry of a deported alien. In the Presentence Report (hereinafter "PSR") the Probation Department has calculated his guideline sentencing range to be seventy-seven (77) to ninety-six (96) months resulting from the Probation Department's determination of a total offense level of 21 and a criminal history category of VI. PSR ¶ 93. Based on the mandate that the court impose a sentence that is "sufficient but not greater than necessary" to achieve the full purposes of sentencing as set forth in 18 U.S.C. s. 3553(a)(2), United States v. Booker, 125 S. Ct. 738 (2005), the defense requests that the court impose a sentence of 36 months imprisonment.

The defense makes this request based on the circumstances of this case which include: (1) a substantial overstatement of the seriousness of criminal history and likelihood of recidivism based on the defendant's criminal history score, (2) the need to avoid unwarranted sentencing disparities because the United States Attorneys Office of the District of Massachusetts does not operate a fast-track program in cases like the present case, and (3) the defendant will be incarcerated by ICE (formerly INS) upon the completion of his sentence but prior to deportation. The defense sentence recommendation is sufficient, reasonable, and falls within the parameters of justice. To be sure, however this sentence recommendation in no way constitutes a waiver of the defense argument, following below, that the statutory maximum under the operative subsection of 8 U.S.C. s. 1326 is two (2) years in this case since the defendant was not indicted for, nor plead guilty to, being deported after having been convicted of a felony.

FACTUAL BACKGROUND

History and Characteristics of Defendant and Circumstances of Offense (18 U.S.C. s. 3553(a)(1).

The facts and background information are derived from the PSR. Christian Martinez is a twenty-five year old El

Salvadoran, the only child born to Marta Martinez and a man who Mr. Martinez never met or knew. Throughout his formative years, crime and gang activity was prevalent in his neighborhood. It should be noted that Mr. Martinez was born at the beginning of a war-torn decade of fighting in El Salvador.

Hoping to start a new life in the United States and ultimately send for her son, Mrs. Martinez left him when he was four years old. Mr. Martinez was separated from his mother for approximately sixteen years until he was twenty years old when he traveled to the United States, leaving the gang activity of his crime ridden surroundings in El Salvador. During the estrangement however, and prior to his reconciliation, Mr. Martinez bounced around from family member to family member staying with his maternal grandmother, his aunt, and at other times staying with his half-siblings.

Once in the United States, Mr. Martinez lived with his mother in East Boston until three years later on March 23, 2004 when he was deported to El Salvador. By January 2005, his mother had moved to Orlando, Florida in order to seek employment. Unfortunately, she is a diabetic and while in Florida was amassing significant medical bills because she could not obtain health insurance. When he was working,

Mr. Martinez sent her money which helped defray her mounting medical bills, sometimes in excess of $200.00 weekly. When he entered the country in January of 2005, he met his mother in Orlando, Florida and soon thereafter persuaded her to return to East Boston where she successfully sought employment and was provided health insurance. Acting on the primordial instinct that a young man has to protect and to provide for his mother, Mr. Martinez's re-entry occurred so that he could care for his ailing mother.

As to education and employment, Mr. Martinez has received what would be a tantamount to an American high school education. He continued vocational education and training by participating in a program in El Salvador in hopes of receiving his commercial driver's license. In El Salvador he maintained gainful employment and while in the United States he consistently worked at Dimitria's Restaurant in Cambridge.

## ARGUMENT

I. <u>Two years is the applicable statutory maximum under 8 U.S.C. § 1326(a)</u>

The defendant was neither indicted for, nor plead guilty to, being deported after having been convicted of a crime of violence. Mr. Martinez was charged with

4

violating 8 U.S.C.§ 1326, entitled "Unlawful Re-entry of Deported Alien." Under 8 U.S.C. § 1326(a) a deported alien who reenters shall be imprisoned not more than two years. Under 8 U.S.C. s. 1326(b)(2) however the statutory maximum increases to twenty years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." The indictment alleges that Mr. Martinez, "being an alien and having been excluded, removed and deported from the United States was found in the United States"..."in violation of Title 8, United States Code, Sections 1326(a) and (b)(2) and Title 6, United States Code, Sections 202(3) and (4) and Section 557." There is no reference whatsoever in the indictment to any prior conviction. Moreover, at the Rule 11 hearing before this court, the defendant did not admit to any fact pertaining to a prior criminal conviction. Consequently, this Court should find that the defendant cannot be sentenced under 18 U.S.C. §1326(b)(2) and should sentence him under subsection (a) to no more than two years.

Any government counter argument relying on the case of Almendarez-Torres v. United States, 523 U.S. 224 (1998) is misplaced. For starters, in that case the defendant admitted during his guilty plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies," and yet argued that the Fifth Amendment required that the prior felony convictions be charged in the indictment. Id. at 227. A mere majority of the court held that subsection (b)(2) is a penalty provision and does not define a separate crime; therefore there was no statutory or constitutional requirement that the government charge that factor in the indictment. Id. at 226-227. In the present case, and in contrast to the facts of Almendarez-Torres, Mr. Martinez did not admit during his plea colloquy to any predicate or prior offense although it must be said that the government made a strenuous effort to have him do so.

In any event, it is dubious that Almendarez-Torres is still a good law. Almandarez-Torres is the last vestige of a bygone era of constitutional law. The string of cases decided after Almandarez-Torres - Apprendi v. New Jersey, 530 U.S. 466 (2000), Ring v. Arizona, 536 U.S. 584 (2002), Blakely v. Washington, 125 S.Ct. 2531 (2004), United States

v. Booker, 125 S. Ct. 738 (2005), and Shepard v. United States, 125 S. Ct. 1254 (2005) - substantially neuters, if not overrules, Almandarez-Torres. These cases establish the Sixth Amendment requirement that factors that raise the statutory maximum must be charged and either proved beyond a reasonable doubt at trial or admitted as part of a guilty plea. It no longer appears that a prior conviction, as was the case in Almandarez-Torres, is no longer a viable exception to the constitutional requirement that facts increasing statutory maximums must be pled and proved by the government. Although not expressly overruled, yet anyway, by the time the Shepard case had been decided it had become clear that a "majority of the court now recognize[d] that Almandarez-Torres was wrongly decided. Shepard, 125 S.Ct. at 1264.

II. Under U.S.S.G. s. 4A1.3(b) the Defendant's Criminal History Category Substantially Overrepresents the Seriousness of his Criminal History and the Likelihood That He Will Re-Offend

At first blush, the defendant's sixteen criminal history points which places him in category VI raise an eyebrow. See PSR ¶'s 39-42. However, upon close scrutiny one readily concludes that the criminal history computation is not an accurate gauge whatsoever in determining the seriousness of his offenses as well as the likelihood of recidivism. For

starters, all of the offenses which resulted in criminal history points occurred while the defendant was between the ages of twenty years and twenty-two years. All of the offenses stemmed from state district court prosecutions and not in state superior court prosecutions where more serious and violent crimes are prosecuted in Massachusetts. This last statement is not, of course, to minimize the seriousness of some of the offenses but rather to place them in their appropriate context.

What is more, the bulk of the defendant's offenses were cases for which the defendant received concurrent sentences of incarceration. For example, in reviewing ¶'s 32-34 of the PSR, the defendant received from the East Boston District Court a one year House of Correction sentence with six months to serve on three different docket numbers with all the sentences to run concurrently. Thirty days later, out of the Somerville District Court, he received a thirty day House of Correction committed sentence which ran concurrently with the sentences he was serving, discussed immediately above. (See ¶ 35 of the PSR). Some seventeen days after receiving the thirty day sentence from the Somerville District Court, the defendant returned to the East Boston District Court and pled guilty to a minor drug offense, possession of cocaine, for

which he received a three month House of Correction sentence committed, concurrent with his other prior East Boston offenses referenced above. While still committed from the foregoing sentences, on November 28, 2003 in the East Boston District Court the defendant received thirty days House of Correction committed to be served from and after his original East Boston sentences. (See PSR ¶ 38).

Extrapolating from the above chronology, the defendant began serving his sentences on August 26, 2003 and was released from his incarceration on January 7, 2004. See PSR ¶ 38. Consequently, the defendant served approximately a little over four months total for these offenses. The only other term of commitment to add to this roughly four month commitment is the two month committed portion of a twelve month sentence stemming from a minor case in Virginia which is referenced in ¶ 37 of the PSR. For all his problems with the court system, Mr. Martinez has been incarcerated for approximately six to seven months.

As an explanation to Mr. Martinez accumulating these convictions, it is also important to point out that there is great pressure placed on a defendant to resolve pending cases often by pleading guilty while he is serving a sentence. This is particularly so if he is to receive a fairly brief house of

correction commitment. In general, defendants are inclined to plea under these circumstances since an open and pending criminal case prevents the individual from paroling from a sentence being served. If on the other hand the defendant wants to fight the charges, he will most likely do so from a jail cell while awaiting trial since the pending charges will not generally go to trial before a brief house of correction commitment has expired. It would not be unusual therefore for a defendant who demands a trial to spend more time incarcerated awaiting trial than would be the case if he merely pled out and received a brief and concurrent House of Correction commitment.

III. The Defendant is Entitled to a Sentence Reduction because the United States Attorney's Office for the District of Massachusetts Does Not Offer a So-called Fast-Track Program.

One of the sentencing factors which Booker requires a court to consider in fashioning an appropriate sentence is 18 U.S. C. s. 3553 (a)(6) which states " the need to avoid unwarranted sentence disparities among defendants with similar sentences who have been found guilty of similar conduct." In other words, similarly-situated defendants must be sentenced similarly. Various districts in the United States offer a so-called fast track program which is geared to facilitate a prompt an easy disposition of

10

illegal re-entry cases in order to provide relief to the criminal docket in these districts. See United States v. Melendez-Torres, 420 F. 3rd 45, 52 (1st Circuit 2005). Defendants in the participating districts receive the benefits of a sentence reduction for participation in the program. Since the United States Attorney's office for the district of Massachusetts does not operate a fast-tracked program, a similarly situated defendant in the District of Massachusetts is punished more than would be if his case were being prosecuted in a participating district. Equality of sentencing can only be reached by lowering the sentence for illegal re-entry defendants in non-participating jurisdictions such as Mr. Martinez.

IV. The Defendant Should Receive a Sentence Reduction For the Time Spent Detained In ICE Custody

The defendant should receive a sentence reduction for the time spent in ICE custody prior to being detained on the present charge as well as a sentence reduction for the

time he will spend in ICE custody subsequent to the sentence he will receive for the present case but prior to his removal from the United States.

Respectfully submitted<br>
By the Attorney,

Dated: 5/16/06

*[signature]*
James J. Coviello
303 Main Street
Charlestown, MA  02151
Tel: (617) 242-6832
Fax: (617) 241-0911
BBO No. 550949

JJC:kmm

(Crim)(Martinez,C)SentMemo