UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                                          CRIMINAL NO.  05-10108-RGS

CHRISTIAN MARTINEZ
_____

UNITED STATES' RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM

The United States respectfully submits this response to defendant's sentencing memorandum in which he argues that because his prior convictions for crimes of violence were not alleged in the indictment nor admitted at his change of plea, the statutory maximum term is two years' imprisonment.  He also argues that his criminal history score overstates the seriousness of his criminal record and that he should be sentenced more leniently because the United States Attorney's Office for the District of Massachusetts does not have a fast-track program for illegal re-entry cases and because he faces time in ICE custody following his term of imprisonment prior to deportation.  The government urges the Court to reject the defendant's arguments and sentence him to 77 months imprisonment, which is the low end of the applicable sentencing guidelines range.

Background

The defendant pleaded guilty on November 10, 2005, to a one-count indictment charging him with unlawful re-entry by a deported alien in violation of 18 U.S.C. § 1326(a) and (b)(2). At the change of plea hearing, the United States advised the Court that, if the case were to go to trial, the government expected it would prove the following: Martinez was born in El Salvador in 1980.  According to ICE, he entered the United States in November 1999, at an unknown place

without inspection.  He was removed from the United States to El Salvador, through Miami, Florida on March 23, 2004.  This removal was after his August 26, 2003 conviction of, among other things, the aggravated felony of assault and battery by means of a dangerous weapon, (a knife), for which he was sentenced to one year in the Suffolk County House of Correction, (six months suspended, probation until August 25, 2005).[1]

Just shy of a year later, on March 21, 2005, Martinez was arrested by the Boston Police Department for knowingly receiving stolen property, possession of burglary tools, and operating a motor vehicle after suspension.  ICE served him with a Notice of Intent/Decision to Reinstate a prior Order on March 29, 2005, at the Suffolk County House of Correction where he was incarcerated.  He was released to ICE custody on March 31, 2005.  There is no documentation in Martinez' ICE/INS file to indicate that he ever applied for permission to re-enter the United States following his deportation.  The FBI compared the ICE fingerprints of Martinez taken in March 2005, with the right index fingerprint of the individual identified as Martinez who was deported on March 23, 2004, and determined that they are prints of the same person.

The Presentence Report ("PSR") calculated Martinez' base offense level ("BOL") to be 8, pursuant to USSG § 2L1.2(a) [PSR ¶19] and increased it 16 levels because of the defendant's prior convictions for crimes of violence pursuant to USSG §2L1.2(b)(1)(A)(ii). [PSR ¶20].  The resulting adjusted offense level of 24 was reduced three levels for acceptance of responsibility,

---

[1] As noted in the Presentence Report, the defendant also was convicted on August 26, 2003, of two other counts of assault and battery, and breaking and entering at night into a building, [PSR ¶¶ 32-33], stemming from two separate incidents occurring on June 15 and June 23, 2002.  He also was convicted on July 17, 2001, for assault and battery on a police officer. [PSR ¶ 30].  At the change of plea, the defendant admitted that he had been removed from the United States and that he did not have permission to re-enter the United States.  He did not admit that the removal was after a conviction for an aggravated felony.

resulting in a total offense level ("TOL") of 21.  With a criminal history VI, the resulting guidelines range is 77 to 96 months.

## Discussion

Martinez first claims that his sentence cannot exceed the statutory maximum of two years' imprisonment for a violation of 8 U.S.C. 1326(a) because he did not admit that he had been deported after a crime of violence, nor was such fact alleged in the indictment.  However, the Supreme Court has consistently and repeatedly held that the Constitution does not require that the "fact" of a prior conviction be charged in the indictment or admitted by the defendant in order to enhance the defendant's sentence.  In United States v. Almendarez-Torres, 523 U.S. 224 (1998), a case precisely on point, the Supreme Court held that the defendant's prior aggravated felony conviction could enhance his sentence for unlawful reentry after deportation without being alleged in the indictment.  523 U.S. at 226-27.  It found that 8 U.S.C. §1326(b)(2) does not constitute a separate offense from §1326(a),[2] but that it is instead "a penalty provision, which simply authorizes a court to increase the sentence for a recidivist."  523 U.S. at 226. "Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment."  523 U.S. at 226-27.  Nor does the defendant gain any traction from his contention that Almendarez-Torres is distinguishable because the defendant there admitted the prior conviction.  The argument that such admission is a necessary prerequisite to a sentence enhancement was flatly rejected by the First Circuit in

---

[2] Section 1326(a) provides for a sentence of up to two years for an alien who unlawfully reenters the United States after having been "denied admission, excluded, deported or removed." Pursuant to section 1326(b)(2), an alien whose removal follows a conviction for an aggravated felony is subject to up to 20 years' imprisonment.  Both provisions were cited in the defendant's indictment in this case.

United States v. Gomez-Estrada, 273 F.3d 400, 401-02 (1st Cir. 2001). In that case, the defendant was charged with illegal re-entry after deportation. He did not admit the prior aggravated felony at either his plea or sentencing hearing. Nevertheless, the First Circuit concluded:

> We hold unequivocally that Apprendi neither overruled Almendarez-Torres nor limited Almendarez-Torres to cases in which the defendant admits a prior aggravated felony conviction on the record. . . . It follows inexorably that the district court appropriately enhanced the appellant's sentence for unlawful reentry on the basis of his prior conviction for an aggravated felony even though the existence of that conviction was not admitted by the appellant, nor charged in the indictment, nor proved to a jury beyond a reasonable doubt.

273 F.3d at 402.

The defendant also argues that it is "dubious" that Almendarez-Torres is good law. [Def. Sent. Mem. 6]. Yet, the Supreme Court has consistently upheld its ruling that there is no constitutional infirmity with a judicial determination of prior convictions used to enhance a defendant's sentence. Thus, in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). By stating that the Apprendi rule did not apply to "the fact of a prior conviction," the Court specifically preserved Almendarez-Torres's holding, "treat[ing] the case as a narrow exception to the general rule." 530 U.S. at 490. Since then, the Supreme Court has continually affirmed the holding in Almendarez-Torres, and has in fact repeatedly reaffirmed Apprendi's exception for a prior conviction. Shepard, 544 U.S. at 24-25; Booker, 543 U.S. at 244; Blakely, 542 U.S. at 301; Dretke v. Haley, 541 U.S. 386, 395

(2004). The First Circuit has likewise continued to recognize the exception for allowing prior convictions to enhance a defendant's sentence. See Gomez-Estrada, 273 F.3d at 401-02; United States v. Work, 409 F.3d 484, 491 n.1 (1st Cir. 2005).

Shepard does not suggest otherwise. In support of his claim that Almendarez-Torres may be ripe for reversal, Martinez cites Justice Thomas's concurrence in Shepard, 544 U.S. at 27 (Thomas, J., concurring) ("a majority of the Court now recognizes that Almendarez-Torres was wrongly decided.") [Def. Sent. Mem. 11]. Any significance that may be seen in Justice Thomas's concurrence in Shepard does not alter the fact that the Supreme Court has not overruled Almendarez-Torres. Even the plurality opinion in Shepard reaffirms the exception for prior convictions: "any fact *other than a prior conviction* sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." Shepard, 544 U.S. at 24 (emphasis added). The Supreme Court's holdings have maintained the exception for a prior conviction, and so it remains binding on this Court. See, e.g., State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (reaffirming that courts of appeals should "leav[e] to this Court the prerogative of overruling its own decisions" even if such a decision "appears to rest on reasons rejected in some other line of decisions"); Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions.")

Indeed, the First Circuit has explicitly rejected the precise argument advanced here, that is, that Almendarez-Torres is inconsistent with Booker and Apprendi and that Shepard

5

foreshadows its eventual demise. United States v. Ivery, 427 F.3d 69, 75 (1st Cir. 2005)("[B]oth *Blakely* and *Booker* recognized the continuing viability of the *Almendarez-Torres* exception. It is not our place to anticipate the Supreme Court's reconsideration of its prior rulings; thus *Almendarez-Torres* remains binding law that we must apply until overruled by a majority of the Supreme Court."); United States v. Jimenez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006)("Whatever the continuing viability of *Almendarez-Torres* we are bound to follow it until it is expressly overruled.") Unless and until the Supreme Court reverses itself on this point, the Court should continue to follow the directly applicable holding in Almendarez-Torres.[3]

The defendant also contends that his 16 criminal history points, and resulting criminal history category VI, overstates the seriousness of his criminal history and his potential to commit other crimes. The defendant claims that all of the scored convictions occurred when he was between the age of 20 to 22 (he is 25 now), were prosecuted in district court where less serious

---

[3] See also, United States v. Mastera, 435 F.3d 56, 59 n.1 (1st Cir. 2006)(rejecting argument that ACCA is unconstitutional because it allows for a mandatory minimum sentence based on facts (that is, facts of prior convictions) found by a judge and not a jury). petition for cert. filed, (U.S. Apr. 19, 2006)(No. 05-10543); United States v. DeLeon, 2006 WL 893615 (1st Cir April 7, 2006)(rejecting argument of defendant convicted of illegal reentry that underlying drug conviction had to be submitted to the jury under *Shepard*); United States v. Work, 409 F.3d 484, 491 n.1 (1st Cir. 2005) ("The rationale of *Apprendi* and therefore of *Blakely* simply does not affect sentence-enhancement provisions premised upon a defendant's prior criminal convictions"); United States v. Lewis, 406 F.3d 11, 21 n.11 (1st Cir. 2005) (in ACC context, noting that "prior criminal convictions are not facts that a jury must find beyond a reasonable doubt"); United States v. Stearns, 387 F.3d 104, 107 (1st Cir. 2004) (rejecting defendant's claims relating to ACC sentencing, holding that "the *Blakely* decision does not encompass sentencing enhancements based upon 'the fact of prior conviction,' which is not the type of circumstance which the Sixth Amendment mandates be determined by a jury, rather than the sentencing court."), cert. denied, 544 U.S. 911 (2005).; United States v. Henderson, 320 F.3d 92, 110 (1st Cir.) ("We have consistently observed with a 'regularity bordering on the monotonous,' that *Apprendi* does not apply to sentencing enhancements based on prior convictions.") (citations omitted), cert. denied, 539 U.S. 936 (2003).

offenses are prosecuted, and resulted in mostly concurrent, and relatively short, prison sentences. Notably, the defendant does not discuss at all the substance of his criminal history which shows numerous convictions for violent offenses, drugs, theft, and for giving false identifying information about himself. For example, the defendant was convicted of two attacks, one with a knife--occurring about a week apart-- on his former girlfriend [PSR ¶32-33]. The former girlfriend took out a restraining order, which the defendant violated. [PSR ¶34]. When the defendant was directed by police to leave a Revere nightclub, he yelled profanities at the officer and threw what was believed to be a glass bottle at him. [PSR ¶30] He was convicted of resisting arrest and receiving stolen property after being observed breaking into a motor vehicle and removing items. He became "combative" at the police station. [PSR ¶38]. He has been convicted of three drug offenses. [PSR ¶35, 36]. Additionally, the instant offense was committed less than two years after his release from custody [PSR ¶40]. Notably, he came to ICE attention because he had been arrested on still another offense--knowingly receiving stolen property, possession of burglary tools and driving with a suspended license. [PSR ¶¶ 11, 44]. Far from overstating his criminal past, and the likelihood of his criminal future, the defendant's criminal history score accurately captures the seriousness of his history and is a good predictor of whether he will commit further crimes. Of course, the defendant faces certain deportation after his term of imprisonment, and so whatever his future crimes may be, there is at least some chance they will not be committed in the United States, unless the defendant unlawfully returns yet again.

    The defendant also argues that he should be sentenced more leniently because this district does not have a fast-track program to dispose of illegal re-entry cases and that, therefore, he is

being sentenced differently than similarly situated defendants in districts with such programs. This argument was advanced, and rejected, by the district court in United States v. Martinez-Flores, 428 F.3d 22, 30 (1st Cir. 2005), cert. denied, 126 S.Ct. 1449 (2006).[4]  In upholding the district court's ruling, the First Circuit noted that it might "never be reasonable to depart downward based on disparities between fast-track and non-fast track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable." Id. at n.3. (citations omitted); see also Melendez-Torres, 420 F.3d at 52-53 (rejecting equal protection challenge to lack of fast-track program in Maine.)

Finally, the defendant argues, without any citation of authority whatsoever or indeed even a reason for the court to do so, that he should receive a sentence reduction for time spent in ICE custody prior to being detained on the present charge (about three weeks) as well as an anticipatory reduction for time he "will spend" in ICE custody after he serves his federal sentence but prior to his removal. [Def. Sent. Mem. 11-12].   In upholding a district court's rejection of a similar request, however, the First Circuit explained that the crime of illegal reentry after deportation "is ordinarily going to be committed by persons who will be deported after their sentences have been served" and the guidelines range "was likely predicated on this understanding." United States v. Jiminez-Beltre, 440 f.3d 514, 520 (1st Cir. 2006).  Indeed, the First Circuit went on to say that the defendant in Jiminez-Beltre, who "did re-enter after

---

[4]This program is discussed at some length in Martinez-Flores, 428 F.3d at 25, and in United States v. Melendez-Torres, 420 F.3d 45, 52 (1st Cir. 2005).  Basically,  fast-track programs have been implemented in border districts to deal with a large number of immigration cases.  Defendants obtain some sentencing benefits in exchange for waiving certain procedural rights and agreeing to dispose of their cases early.  Massachusetts does not have a fast-track program.

deportation, is hardly in a good position to argue for a shorter sentence on the ground that another deportation of him will protect the public adequately against yet another repetition." Id.

WHEREFORE, for the foregoing reasons, the United States respectfully urges the Court to sentence the defendant to 77 months imprisonment.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Sandra S. Bower
SANDRA S. BOWER
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 30, 2006.